Murguia, Circuit Judge,
dissenting in part:
I disagree with the majority’s conclusion as to Maria’s claim alleging ineffective assistance of counsel in the guilt phase.
During the guilt phase of a bifurcated, first-degree murder trial, a defendant can introduce expert testimony opining that the defendant’s mental “illness caused him to obey a command hallucination to” commit the murder, and therefore the defendant “was incapable of harboring the necessary premeditation [and] deliberation.” People v. Duckett, 162 Cal.App.3d 1115, 209 Cal.Rptr. 96, 100-01 (1984).
In the present case, both experts acknowledged that Maria experienced command hallucinations as he was committing the murder. Despite this undisputed evidence, Maria’s counsel failed to present any expert testimony explaining how command hallucinations can preclude premeditation and deliberation. In my view, “counsel’s performance was deficient,” and Maria “was prejudiced by the deficiency.” Wood v. Ryan, 693 F.3d 1104, 1118 (9th Cir. 2012). Moreover, I believe the state court was unreasonable to conclude otherwise.
1. Counsel’s failure to present expert testimony in the guilt phase was deficient. “A defendant who elects to plead both not guilty and not guilty by reason of insanity may have the opportunity to employ mental state evidence in two different ways.” People v. Mills, 55 Cal.4th 663, 147 Cal.Rptr.3d 833, 286 P.3d 754, 759 (2012) (emphasis added). In the guilt phase, a defendant can introduce evidence of mental illness to negate premeditation and *645 deliberation. Cal. Penal Code § 28(a). In the sanity phase, a defendant can use evidence of mental illness to prove that he was insane at the time he committed the crime. Cal. Penal Code § 25(b). in light of these differing purposes, it is not entirely clear what strategic value counsel could have gained by saving the evidence of mental illness exclusively for the sanity phase. Quite to the contrary, counsel squandered an opportunity to negate premeditation and deliberation, without any apparent offsetting benefits.
2. Maria suffered' prejudice because there is a “reasonable probability that at least one juror would have struck a different balance” if the jury had heard expert testimony about how command hallucinations diminished Maria’s ability to premeditate and deliberate. Wiggins v. Smith, 539 U.S. 510, 513, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). “A reasonable probability is one sufficient to undermine confidence in the outcome, but is less than the preponderance more-likely-than-not standard.” Lambright v. Schriro, 490 F.3d 1103, 1121 (9th Cir. 2007) (internal quotation marks omitted).
California courts consider the following factors in analyzing deliberation and premeditation: planning, motive, and manner of killing. People v. Anderson, 70 Cal.2d 15, 73 Cal.Rptr. 550, 447 P.2d 942, 949 (1968). There was no evidence here that Maria had any plans to kill his cousin before he entered her house that day; in fact, he did not even come to the house with a weapon. Additionally, there was no evidence that Maria harbored a motive for killing his cousin. Instead, after watching television with his cousins for “a few minutes,” Maria experienced command hallucinations urging him to take his cousin’s life, so he entered the kitchen and secured a knife. Maria then rejoined his cousins and “[a]fter a minute,” when one of his cousins left the room, Maria took his quadriplegic cousin’s life.
The jury’s finding of premeditation and deliberation here hangs on a thin reed, essentially consisting of Maria’s decision to .eonceal a knife and Maria’s struggle to resist the voices in his head for several minutes. See Strickland, 466 U.S. at 696, 104 S.Ct. 2052 (“[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.”). Expert testimony would have shed some light on what was happening in Maria’s mind during those taut minutes by explaining to the jury how command hallucinations impact thought processes and perceptions of reality, resulting in disorganized thoughts and impulsivity. If counsel had offered such expert testimony during the guilt phase, there is “a reasonable probability that at least one juror would have harbored doubt about” premeditation and deliberation. Duncan v. Ornoski, 528 F.3d 1222, 1245 (9th Cir. 2008).
The weak evidence of premeditation and deliberation by itself is sufficient to demonstrate prejudice, but “there is an additional indicator of prejudice here because the jury had a difficult time reaching a verdict.” Vega v. Ryan, 757 F.3d 960, 974 (9th Cir. 2014); Wharton v. Chappell, 765 F.3d 953, 978 (9th Cir. 2014) (analyzing the prejudice prong and noting that “the jury did not reach its verdict easily, possibly out of recognition that, although his crimes were heinous, Petitioner himself clearly suffers from serious mental illness and came from a disadvantaged and abusive home”). The guilt phase deliberations lasted more than one day, even though the jury heard Maria’s confession, listened to eyewitness testimony, and did not have any evidence to negate the mens rea required for first-degree murder. The sanity phase deliberations lasted three days, and *646 the jury submitted a note to the court asking for a definition of “preponderance of the evidence,” • the standard by which Maria had to prove insanity. These protracted deliberations show that the jurors were possibly troubled by Maria’s mental illness.
Considering this record as a whole — the jury’s difficulty in reaching a verdict, the undisputed evidence of Maria’s command hallucinations, and the scant evidence of premeditation and deliberation — the state court was unreasonable to conclude that Maria was not prejudiced by counsel’s deficient performance. I, therefore, respectfully dissent from the majority’s decision denying habeas relief.